IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

KHADIJA M.,[1]                                                    No. 6:24-cv-00631-YY

               Plaintiff,                              OPINION AND ORDER

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

               Defendant.

YOU, Magistrate Judge:

Plaintiff Khadija M. seeks judicial review of the Social Security Commissioner

("Commissioner")'s final decision denying her application for Disability Insurance Benefits

("DIB") under Title II of the Social Security Act ("SSA"). 42 U.S.C. §§ 401–33. This court has

jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g) and §

1383(c)(3). For the reasons set forth below, the Commissioner's decision is AFFIRMED.

**PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on July 24, 2018, with an amended alleged onset

date of January 26, 2017. Tr. 180, 222-32. The Commissioner denied Plaintiff's claim initially,

and on reconsideration. Tr. 96-100, 107-09. Plaintiff filed a written request for a hearing, and a

hearing was held before Administrative Law Judge John Sullivan in February, 2021. Tr. 32-63.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the nongovernmental party in this case.

The ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Tr. 12-31. The Appeals Council denied Plaintiff's request for review on August 10, 2021. Tr. 1–6.

Plaintiff timely appealed, and the parties stipulated that the case would be remanded for the ALJ to further consider the claimant's symptom allegations, further consider the residual functional capacity, offer the claimant an opportunity for a new hearing, take any further action needed to complete the administrative record, and issue a new decision. Tr. 687. The ALJ did so, and on December 19, 2023, again found Plaintiff not disabled under the Act. Tr. 592-619. Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the agency from which Plaintiff now seeks judicial review.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and " 'may not affirm simply by isolating a specific quantum of supporting evidence.' " *Garrison v. Colvin*, 759 F.3d 995, 1009–10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld

if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533
F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which can be expected to result in death
or which has lasted or can be expected to last for a continuous period of not less than 12
months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to
determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520;
*Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180
F.3d 1094, 1098–99 (9th Cir. 1999)).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity
between her alleged onset date and the date last insured, March 31, 2022. Tr. 598. At step two,
the ALJ found Plaintiff had the following severe, medically determinable impairments: reduced
hearing, major depressive disorder, anxiety disorder, attention deficit hyperactivity disorder
(ADHD), and posttraumatic stress disorder (PTSD). Tr. 598. At step three, the ALJ found no
impairment met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart
P, Appendix 1. Tr. 600. The ALJ assessed that Plaintiff has a residual functional capacity
("RFC"):

> to perform a full range of work at all exertional levels but with the following
> nonexertional limitations: the claimant was able to work in an environment with
> no more than moderate noise; she was able to understand, remember, and carry
> out simple, routine tasks; she was able to make simple work-related decisions; she
> was able to interact with supervisors, coworkers, and the general public on an
> occasional basis; and with time off-task accommodated by normal breaks.

Tr. 601.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. Tr. 611. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Plaintiff can perform, such as floor waxer, marker, and router. Tr. 612. The ALJ therefore found Plaintiff not disabled. Tr. 613.

**DISCUSSION**

Plaintiff argues that the ALJ erred by (1) discrediting her subjective symptom statements without clear and convincing reasons for doing so, (2) failing to properly evaluate the medical opinions of James Brooks, PhD, the state agency psychosocial consultants, Aroon Suansilppongse, MD, and Susan South, PsyD, and mental health counselor, Jason Lamb, LPC-A, and (3) rejecting competent lay testimony from Plaintiff's children without stating a germane reason.

## I.    Symptom Testimony

Plaintiff contends the ALJ erred by discrediting her testimony about the extent of her mental health limitations. Pl. Br. 2-7. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the

claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At the initial hearing, Plaintiff testified that she previously received Social Security disability benefits due to mental symptoms and medication side effects. Tr. 40. She became able to return to work for a period of time after she stopped taking some of her medications. Tr. 40. She worked with her prescriber to taper off of her last two medications because they were causing physical issues and increased anxiety; however, the medication taper "didn't go well," and Plaintiff became physically and emotionally ill. Tr. 41-42. She required medical leave and was never able to return to work. Tr. 43-45. She experienced panic attacks and forgetfulness, and felt overwhelmed. Tr. 45-46. She had difficulty keeping up with tasks. Tr. 46. She testified to gaps in medical treatment because she was afraid of medical care. Tr. 47. She stated, "[e]veryone always offers just medications, drugs for my problems, and I just can't do that." Tr. 47, 51. She was afraid that medications would cause further harm like they had in the past. Tr. 51.

At the remand hearing, Plaintiff testified that she was living in a tiny home cooperative village. Tr. 628. There were about twenty co-op members. Tr. 634. She did not socialize. Tr. 634. Her co-op responsibilities included attending meetings and occasionally taking minutes or researching information. Tr. 629. There were times when she was too impaired or depressed to participate in these activities, and her counselor would provide a "reasonable accommodation" or another co-op member would donate hours so that she would not risk eviction. Tr. 629.

Plaintiff continued to experience extreme fear of medications. Tr. 630. She had finally found a counselor whom she trusted. Tr. 631. She testified to ongoing episodic depression and fear:

> I just know I have a lot of dark periods, and my whole life is just based around making sure I can stay housed, keeping agreements, and try to take care of myself. . . . [W]e look at it kind of like windows and waves. There's just terrible long waves, and you'll get some good windows, and that gets you hopeful. But then the windows are gone, and you're back in the waves, just riding the waves. I don't -- it's just been consistently going on like that.

Tr. 632. She isolated herself when depressed. Tr. 633. She had a hard time maintaining personal hygiene and performing household chores during these periods. Tr. 633-34. When asked why she was unwilling to try different psychiatric medications, she responded,

> I don't ever want to be dependent on a drug again. I can't. I just -- I'm too afraid. I've lost everything and went homeless, Your Honor, from quitting a medication. I lost my mind. I lost everything. I lost my kids. I had to go to different homes. My cats I never saw again. I lost heirlooms from my family, everything, as if my life burnt down. I'm afraid. I just -- I can't risk doing through akathisia or the other withdrawal symptoms. I just can't, Your Honor.

Tr. 640-41.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the

medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 603. Specifically, the ALJ found Plaintiff's symptom allegations were inconsistent with objective medical evidence and her activities of daily living. *Id.*

The ALJ reasonably discounted Plaintiff's claimed limitations for being inconsistent with the record. Conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. § 416.929(c)(2). At the hearing, Plaintiff testified about significant mental health issues, including isolation, depression, panic attacks, and forgetfulness. *See, e.g.*, Tr. 41-47, 628-32. Plaintiff further testified that she did not "take medication for depression, anxiety, and such" "due to just extreme fear" after she "contracted acute withdrawal from coming off Cymbalta cold turkey" in 2017. Tr. 630. She explained, "I can't go through any kind of drugs that cause dependence and such." *Id.*

In discounting plaintiff's alleged limitations, the ALJ reasonably considered Plaintiff's treatment compliance. Throughout his decision, the ALJ discussed Plaintiff's issues with treatment compliance and her alleged rationale for not seeking treatment. The ALJ explained that despite Plaintiff's testimony that she could not find a therapist she could trust, she repeatedly indicated she was not interested in mental health counseling after ceasing therapy in May 2017, even though she had received multiple referrals and recommendations. Tr. 603, 607 (citing Tr. 309-12, 577, 584, 992). Further, the ALJ considered that Plaintiff had a hospitalization following an exacerbation of mental health symptoms in November 2017, after stopping her mental health medication suddenly, and was subsequently discharged as "stable." Tr. 603, 607 (citing Tr. 315-34, 541-43). The ALJ noted that aside from this hospitalization, the record included various gaps in treatment, and explained this "tend[ed] to indicate [Plaintiff's] symptoms were not so problematic as to prompt her to seek treatment." Tr. 607. The ALJ's consideration of Plaintiff's

treatment compliance and explanation as to how Plaintiff's allegations were contradicted by the record was proper. *See* SSR 16-3p, 2017 WL 5180304 at *9-10 (explaining ALJs are permitted to find that an individual's failure to seek or follow prescribed treatment in finding symptoms are inconsistent with the overall record after "considering possible reasons" for not complying with treatment). The records showing that Plaintiff failed to seek additional care for her mental health symptoms undermine her allegations of more significant limitations and amount to substantial evidence supporting the ALJ's decision to discount her testimony.

The ALJ also reasonably highlighted several objective medical records that showed Plaintiff's mental health symptoms were not as limiting as she alleged. For example, the ALJ cited multiple findings of no apparent distress, no ongoing ideations, appropriate behavior and interaction, and no cognitive or functional deficits. Tr. 603-05 (citing, e.g., Tr. 389, 434, 438, 456-57, 541-43, 579). The ALJ discussed Plaintiff's April 2019 consultative psychological examination with Pamela Roman, Ph.D., and explained that despite Plaintiff's reported hospitalizations over the past 22 years, her employment record showed she was able to work at substantial gainful activity levels for significant portions of this period. Tr. 605-06; Tr. 527. Dr. Roman's testing showed Plaintiff "performed perfectly" on the Information and Orientation items and Mental Control Items, could recall three out of three unrelated items after three minutes, could spell "world" correctly forwards and backwards, and could name the first president and the states that border Oregon. Tr. 529. Although Plaintiff had poor abstracting abilities, she scored average on the intelligence test and could do simple addition, subtraction, multiplication, division, and fractions. *Id.* Dr. Roman noted that Plaintiff was a bright person with a bachelor's degree and a history of working for non-profits, which the ALJ explained "suggest[ed] that she has demonstrated the ability to understand more complicated instructions."

Tr. 606; Tr. 529-30. At bottom, the ALJ's conclusion that the record evidence did "not corroborate [Plaintiff's] allegations of debilitating symptoms precluding all work activity" was reasonable. Tr. 605. These medical records were additional, substantial evidence supporting the ALJ's decision to discount Plaintiff's testimony.

The ALJ further discounted Plaintiff's subjective symptom testimony because it was inconsistent with some of her daily activities. Tr. 603-05. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021). A claimant need not be utterly incapacitated to receive disability benefits, however, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to his or his credibility).

The ALJ reasonably found several of Plaintiff's reported daily activities clashed with her allegations about limiting mental health symptoms. Although Plaintiff alleged that she suffered significant limitations from her mental health issues, the ALJ noted that she still managed to complete tasks as part of her communal living arrangement, including going to meetings and

taking minutes, doing research about projects, and completing various other administrative tasks. Tr. 603. The ALJ noted these activities contrast directly with Plaintiff's testimony and "demonstrate an ability to be around others, coordinate with others, concentrate, and persist." Tr. 603. The ALJ noted that plaintiff's "mental health therapist provided her 'reasonable accommodations' for not doing her tasks at times," but observed "this would have only been recently, and well past her date last insured." *Id.*; *see* Tr. 629 (November 2023 hearing testimony describing "my counselor can vouch for me and give me what is called a reasonable accommodation for depression"). Because the ALJ reasonably cited activities that conflict with Plaintiff's allegations about some of the limitations that her mental health symptoms cause, this was another clear and convincing reason for the ALJ to discount at least portions of Plaintiff's testimony.

Plaintiff urges the Court to adopt a different interpretation of the record, but does not undermine the substantial evidence supporting the ALJ's decision. Specifically, Plaintiff argues the ALJ overstated her ability to complete daily activities and failed to acknowledge that her decision to discontinue medication management and gaps in care were at least in part a result of her underlying psychiatric disorders.[2] Pl. Br. 16-17. But the ALJ did not cite these activities as independent proof that Plaintiff could work a full time job, only to point out inconsistencies

---

[2] Plaintiff argues that "the record shows that [her] decision to discontinue medication management and gaps in care were at least in part a result of her underlying psychiatric disorders," but does not identify what parts of the record explain these gaps. Pl. Br. 17. As Plaintiff acknowledges, the Ninth Circuit "do[es] not punish the mentally ill for occasionally going off their medication *when the record affords compelling reason* to view such departures from prescribed treatment as part of claimants' underlying mental afflictions." Pl. Br. 17 (citing *Garrison*, 759 F.3d at 1018 n.24) (emphasis added). However, without some record citation to support Plaintiff's departure from mental health treatment, there is no basis to conclude that the ALJ did not reasonably rely on these gaps in treatment to support the inference that "claimant's symptoms were not so problematic as to prompt her to seek treatment" and were therefore less severe than she alleges. Tr. 607.

between Plaintiff's symptom testimony and her reported activities elsewhere in the record. Furthermore, the ALJ considered the reasons Plaintiff proffered for failing to pursue more significant treatment, and Plaintiff's arguments about her failure to follow through on treatment are an effort to have this Court re-weigh the evidence, which is beyond the scope of review. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ."). Even when there are two reasonable interpretations—Plaintiff's and the ALJ's—the ALJ's interpretation must prevail. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."). Against that backdrop, even though Plaintiff clearly interprets the evidence differently, she cannot establish error by simply advancing a different interpretation of the medical evidence.

Plaintiff argues the ALJ erred when considering her appearance at the hearing and her allegations of gastrointestinal issues, but neither constitutes reversible error. For one, Plaintiff faults the ALJ for describing her presentation at the remand hearing as inconsistent with her alleged symptoms. Pl. Br. 16. The ALJ noted that Plaintiff testified "in an organized and clear manner that was directly responsive to the questions she was asked and without the need for redirection over the course of about 30 minutes." Tr. 603. An ALJ may consider both a claimant's testimony and how the claimant presents at the hearing when evaluating the RFC; although a claimant's demeanor at the hearing may not be dispositive, it is one data point an ALJ may consider. See SSR 16-3p, 2017 WL 5180304 at *7. And even if this were harmful error, as discussed above, the ALJ looked to Plaintiff's presentation at her medical appointments, her treatment history, her consultative examination, and her daily activities to reasonably discount

aspects of her testimony. Tr. 601-11. It was therefore not reversible error for the ALJ to refer to Plaintiff's mien at the hearing in his written opinion.

Plaintiff also argues that the ALJ erred in failing "to acknowledge the psychiatric component to [her] reported physical symptoms when considering her alleged gastrointestinal issues." Pl. Br. 17. In considering Plaintiff's testimony, the ALJ acknowledged that Plaintiff reported "severe gastrointestinal issues," but concluded that "the record does not document evidence of severe gastrointestinal issues." Tr. 605. Instead, as the ALJ noted, an abdominal CT showed "no evidence of diverticulitis," and Plaintiff's ovarian cysts (the original cause of the abdominal pain) were "assessed as resolved" by January 2017. Tr. 604. The ALJ further noted that although Plaintiff reported having missed two weeks of work due to anxiety and abdominal discomfort with fecal urgency and cramping, she reported that these symptoms had improved. Tr. 604. In sum, the ALJ reasonably considered Plaintiff's testimony concerning gastrointestinal issues, compared that testimony to the record, and concluded those issues were not severe. Plaintiff's argument that the ALJ did not "acknowledge the psychiatric component" to these medical issues does not demonstrate harmful error, and the ALJ's decision will not be disturbed on this basis.

## II.    Medical Opinion Evidence

Plaintiff also argues the ALJ did not properly consider several medical opinions. Pl. Br. 3-13. For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. 20 C.F.R. § 404.1520c. Instead, the agency considers several factors. 20 C.F.R. § 404.1520c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §

404.1520c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Under this framework, ALJs must "articulate ... how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. § 404.1520c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R § 404.1520c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

A.  *James Brooks, Ph.D.*

At the remand hearing, the ALJ called Dr. Brooks to testify as a medical expert regarding Plaintiff's mental functioning. The ALJ instructed Dr. Brooks to consider only the records through the date last insured, i.e., not to consider evidence after that date. Tr. 647. Dr. Brooks opined that the evidence met the criteria for depression and anxiety, but did not meet the criteria for PTSD. Tr. 643-47. Dr. Brooks opined that Plaintiff experienced mild limitations to her ability to understand, remember, or apply information and concentrate, persist, or maintain pace, as well as moderate limitations to her ability to interact with others and adapt or manage herself. Tr. 647-48. Dr. Brooks further opined that Plaintiff "would be generally capable of at least simple, repetitive tasks and could have occasional contact with supervisors, coworkers, and the general public." Tr. 650.

The ALJ asked Dr. Brooks for his opinion based on the "objective medical evidence," and Dr. Brooks explained, "I tend to base my evidence and testimony primarily on the objective medical evidence, which is psych evaluations, mental status evaluations, and not just a reporting of symptoms." Tr. 642, 647-48. Nevertheless, Dr. Brooks testified that if he were to take Plaintiff's hearing testimony into account, "it's very possible that the B criteria would be marked at times," which the ALJ interpreted meant "not on a persistent basis." Tr. 608, 648. Dr. Brooks also observed that plaintiff testified "there would be a significant problem" in her ability to regularly attend work. Tr. 650-51. However, Dr. Brooks opined, "Based on the actual objective evidence I have, I don't see evidence of that being a problem." Tr. 651. Additionally, Dr. Brooks noted that, although Plaintiff testified to difficulties in functional limitations, "her [mental] functioning has been described as intact" in the medical evidence from the relevant period. Tr. 650-52.

The ALJ found Dr. Brooks' opinion persuasive because "it is supported by the evidence of record, he had the opportunity to review the evidence at the hearing level, and he recited the record in support of his opinion." Tr. 609.

Plaintiff argues the ALJ committed two related errors when considering Dr. Brooks' opinion. First, Plaintiff contends the ALJ erred by instructing Dr. Brooks to disregard the medical evidence after the date last insured, arguing the Ninth Circuit has held that "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition." Pl. Br. 4-5 (*citing Lester v. Chater,* 81 F.3d 821, 832 (9th Cir. 1995)). And Plaintiff is right so far as it goes: medical evidence postdating the DLI can sometimes be relevant to a disability claim. *See Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) ("It is obvious that medical reports are inevitably rendered retrospectively and should not

be disregarded solely on that basis."). But that does not mean it was error for the ALJ to request a medical opinion based only on the objective medical evidence from the relevant period. Medical professionals provide expert opinions in almost every social security disability case, often basing those opinions solely on the objective medical evidence from before the claimant's date last insured. Questions about whether the medical expert relied on particular record evidence go to the weight of the medical opinion, which is for the ALJ to assess. 20 C.F.R. § 404.1520c. It was not error for the ALJ to instruct Dr. Brooks to base his opinion on medical evidence from before the date last insured, and the ALJ otherwise based his evaluation of Dr. Brooks' opinion on substantial evidence.

Plaintiff likewise faults the ALJ for constraining Dr. Brooks' opinion to the objective medical evidence, rather than allowing him to offer an opinion based on the subjective symptom testimony offered at the hearing. Pl. Br. 5-6. She argues "the ALJ was wrong to simply disregard Dr. Brooks' conclusions that accounted for both objective and subjective evidence…because the ALJ must consider *both* the medical evidence and the testimonial evidence when determining a claimant's RFC." Pl. Br. 6 (citing *Laborin v. Berryhill*, 867 F.3d 1151, 1153–54 (9th Cir. 2017) (emphasis in original)). And again, Plaintiff is right to a point. The ALJ must consider both medical and testimonial evidence when determining the RFC. 20 C.F.R. 404.1520(3). However, ALJs are solely responsible for evaluating subjective allegations and evaluating conflicts in the evidence. *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Therefore, the ALJ did not err in directing Dr. Brooks to testify about the objective evidence.

B. *Aroon Suansilppongse, M.D. and Susan South, Psy.D.*

Dr. Suansilppongse and Dr. South reviewed the medical record in May 2019 and January 2020, respectively, and agreed that although Plaintiff "would be able to complete tasks at an

acceptable pace," her "anxiety and depressive reaction, infrequent distraction and alleged pain/headaches/fatigue would occasionally interfere with her ability for sustained concentration and persistence or for task completion." Tr. 77, 93. Dr. Suansilppongse additionally opined that Plaintiff's "social avoidance and infrequent episodes of panic attacks, anger, mood swings, irritability and impulsive behavior would occasionally interfere with her ability to interact appropriately with supervisors, coworkers or the public. However, she would be able to complete tasks with infrequent contact with others." Tr. 78. Dr. Suansilppongse also concluded that Plaintiff's "transient cognitive dysfunction and polysubstance use would occasionally interfere with her ability to set realistic goals or make plans independently of others." *Id.*

The ALJ explained that he found the portion of Dr. Suansilppongse's finding that Plaintiff could "complete tasks with infrequent contact with others" persuasive and thus limited Plaintiff to no more than occasional interaction with others. Tr. 608-09. The ALJ did not evaluate the other findings from Drs. Suansilppongse and South. *Id.* Plaintiff argues the ALJ committed two errors by failing to discuss these opinions in more depth. Plaintiff contends the ALJ found Dr. Suansilppongse's social interaction limitations persuasive but did not properly incorporate them into the RFC, because the RFC's "infrequent" contact is different than the "occasional" contact recommended by Dr. Suansilppongse. Pl. Br. 8. Plaintiff also argues that the ALJ did not properly evaluate Dr. Suansilppongse's finding that Plaintiff's symptoms "occasionally interfere with [Plaintiff's] ability to set realistic goals or make plans independently of others." Pl. Br. 9.

Plaintiff has not identified how either of the ALJ's purported errors concerning Dr. Suansilppongse's and Dr. South's opinions were harmful. A claimant bears the burden of demonstrating that an ALJ's error was harmful by showing it was either prejudicial or consequential to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r Soc. Sec.*

*Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). As Defendant points out, the first error Plaintiff identifies— failure to incorporate social interaction limitations into the RFC—is harmless because every job identified by the vocational expert describes interacting with others as "Not Significant" and talking as "Not Present." *See Floor Waxer*, DOT: 381-687-034, 1991 WL 673262; *Marker*, 209.587-034, 1991 WL 671802; *Router*, DOT: 222.587-038, 1991 WL 672123. Given these jobs do not require more than minimal social interaction, any alleged issue with the social interaction limitations was harmless. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (any omission of a limitation in the RFC is not a valid basis for reversal so long as the identified jobs incorporate the omitted limitations). The second error that Plaintiff identifies is harmless as well. The ALJ's failure to evaluate Dr. Suansilppongse's finding that Plaintiff's symptoms "occasionally interfere with [Plaintiff's] ability to set realistic goals or make plans independently of others" does not conflict with Plaintiff's ability to do unskilled jobs.[3] Because neither error that Plaintiff identified regarding these two medical opinions was harmful, there is no reversable error.

### C.  Jason Lamb, LPC-A

In October 2023, Jason Lamb, LPC-A, reported in a written statement that he had been treating Plaintiff since June 2023 and currently saw her once a week for counseling. Tr. 1080. Plaintiff complained of severe chronic pain and other physical symptoms that exacerbated her level of distress and impacted her functioning and ability to regulate her emotions. Tr. 1081. She experienced daily excessive worry and depressed mood, and was frequently overwhelmed, frustrated, and angry. *Id.* She had a frequent high degree of anxiety in public. *Id*. She was

---

[3]*See* POMS DI 25020.010(4)(b), https://secure.ssa.gov/poms.nsf/lnx/0425020010 (noting that "the ability to set realistic goals and make plans independently of others" is only a requirement of semi-skilled or skilled work).

overwhelmed by even minimal community duties where she lived. *Id.* These duties significantly triggered her distress, which impacted her ability to participate. *Id.* Lamb wrote, "It's my professional opinion she would be overwhelmed by employment, struggling with duties and communication." *Id.* He explained, "I believe that [Plaintiff]'s symptoms of distress and anxiety combined with her reported medical issues seriously and significantly impair her functioning. This impairment is significant enough to interfere with her ability to work even on a part-time basis." *Id.*

Lamb assessed moderate to marked limitation in Plaintiff's ability to understand, remember, and carry out simple instructions; moderate limitation in her ability to make judgments on simple work-related decisions; and marked limitation in her ability to understand, remember, and carry out complex instructions and make judgments on complex work-related decisions. Tr. 1082-83. He identified the frequency and intensity of Plaintiff's anxiety and distress as factors that supported his assessment. Tr. 1083. He assessed extreme limitation in Plaintiff's ability to interact appropriately with the public, supervisors, and coworkers, and marked limitation in her ability to respond appropriately to usual work situations and changes in a routine work setting. Tr. 1083.

When asked if other capabilities were affected by plaintiff's impairments, Lamb responded, "[Plaintiff] reports that her physical health issues coupled with her high levels of distress and other emotional impairments interferes significantly with her ability to maintain a regular schedule and consistently manage to complete household chores, community duties, etc." Tr. 1084. He noted that during their weekly sessions, Plaintiff consistently reported significant impairments in her functioning due to ongoing medical issues and high levels of anxiety and distress. Tr. 1084. Lamb opined that the limitations assessed had been present since he started

treating Plaintiff, and noted that Plaintiff reported that her impairments had worsened about six years prior. Tr. 1084. Lamb concluded that Plaintiff would be absent more than four workdays per month. Tr. 1085. The ALJ found Lamb's opinion unpersuasive because it lacked support and was inconsistent with the record. Tr. 611.

The ALJ adequately discussed the strength of the evidence underlying Lamb's opinion in finding it unpersuasive. Tr. 610-11. The supportability factor requires ALJs to consider the persuasiveness of a medical opinion based on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or his medical opinion." 20 C.F.R. § 404.1520c(c)(1). The ALJ noted that Lamb did not begin treating Plaintiff until 2023, over a year after the date last insured, March 31, 2022. Tr. 610; *see* Tr. Tr. 992-95 (showing assessment date of June 6, 2023). It was reasonable for the ALJ to find Lamb's opinion unpersuasive for this reason; Lamb did not base his opinion on evidence from the relevant period or adequately explain the basis for his retroactive opinions. *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998), as amended (Jan. 26, 1999). Indeed, Lamb framed his opinion in the present tense, and did not suggest why it should apply to the 2017-22 time frame. *See, e.g.* Tr. 1082.

The ALJ also reasonably considered the inconsistency of Lamb's limitations with the overall medical record. The consistency factor requires the ALJ to assess medical opinions' alignment with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). The ALJ found several aspects of Lamb's opinion inconsistent with the record, and therefore not fully persuasive. Tr. 610-11. For example, the ALJ highlighted that Lamb's extreme limitations conflicted with Dr. Brooks' assessment of the same treatment notes. Tr. 610-11. Dr. Brooks reviewed the record and testified that the record did "not seem to fully support these kind of extreme limitations." Tr. 646. The ALJ further noted that Lamb's opinion

of Plaintiff's limitations conflicted with her record of improvement with treatment (when she

sought it). Tr. 610-11. At her initial consultation for mental health treatment in June 2023,

Plaintiff reported that she experienced an increase in symptoms after quitting medication in 2017

and was interested in seeking treatment. Tr. 992-95. Notably, after undergoing consistent

treatment for three months, Plaintiff reported "significant reduction in stress," and on

examination was interactive, had no issues with cognitive functioning, and displayed an

appropriate affect, euthymic mood, and intact functional status. Tr. 1018-19. In sum, the ALJ

adequately considered these other aspects of the medical record, and reasonably concluded they

were inconsistent with several of the limitations in Lamb's opinion.

## III.    Lay Witness Testimony

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary

must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation

omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and

persistence of your symptoms, we consider all of the available evidence from your medical

sources and nonmedical sources about how your symptoms affect you."). Under the 2017

regulations, the ALJ is not "required to articulate how [the ALJ] considered evidence from

nonmedical sources" using the same criteria required for the evaluation of medical sources. 20

C.F.R. §§ 404.1520c(d), 416.920c(d).

The ALJ must give reasons "germane to the witness" when discounting the testimony of

lay witnesses. *Valentine,* 574 F.3d at 694. But the ALJ is not required "to discuss every witness's

testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded*

*on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid, germane reasons for

rejecting testimony from one witness, the ALJ may rely on those reasons for rejecting similar

testimony by a different witness. *Molina*, 674 F.3d at 1114. Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122.

In October 2023, Plaintiff's son and daughter provided letters in support of her disability application describing her symptoms and limitations. Tr. 822-23, 826. The lay witness testimony tracked Plaintiff's own account of her mental health symptoms from 2017 to 2022. Tr. 822-23, 826.

The ALJ provided specific, germane reasons for discounting Plaintiff's children's testimony. The ALJ found the lay witness statements inconsistent with the record, and with one another. Tr. 611. For instance, the ALJ explained that Plaintiff's daughter described a longstanding history of mental health issues, while Plaintiff's son described Plaintiff "as having been able to work, maintain a household, and take care of her children reliably." *Id.* Further, the ALJ noted that while Plaintiff's daughter alleged that Plaintiff was doing better after stopping medications, her son reported that her symptoms instead worsened. *Id.* The ALJ also identified the inconsistency between Plaintiff's son's statement about her inability to keep up with mandated community tasks and the fact that "[Plaintiff] testified that she has never failed to meet these requirements, even making arrangements with others to meet her obligations when needed." *Id. (comparing* Tr. 49-51 *with* Tr. 826). Adopting Plaintiff's arguments about the consistencies between her children's statements and the record would require this Court to re-weigh the evidence, which (as noted above) is beyond the scope of review. *Ahearn v. Saul*, 988

F.3d at 1115. Ultimately, the ALJ gave sufficient reasons to discount the lay witness testimony, and his decision to find their statements unpersuasive is supported by substantial evidence.

## CONCLUSION

For the reasons given above, the Commissioner's decision is affirmed and this case is dismissed.

IT IS SO ORDERED.

DATED April 17, 2024.

_____/s/ Youlee Yim You_____
Youlee Yim You
United States Magistrate Judge